UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___7/01/2015__
```

-------------------------------------------------------------X

UPT POOL LTD.,                                   :
                                                 :
                    Plaintiff,                   :
                                                 :
          -against-                              :          14-CV-9262  (VEC)
                                                 :
DYNAMIC OIL TRADING (SINGAPORE) PTE. :
LTD., O.W. BUNKER USA INC., O.W. BUNKER:
NORTH AMERICA INC., O.W. BUNKER       :
HOLDING NORTH AMERICA INC., HARLEY    :
MARINE SERVICES, INC., ING BANK N.V.,  :
                                                 :
                    Defendants.:

-------------------------------------------------------------X

BIRCH SHIPPING LTD.,                             :
                                                 :
                    Plaintiff,                   :
                                                 :          14-CV-9282 (VEC)
          -against-                              :
                                                 :
O.W. BUNKER CHINA LTD. (HK), O.W.                :
BUNKER USA INC., O.W. BUNKER NORTH               :
AMERICA INC., O.W. BUNKER HOLDING                :
NORTH AMERICA INC., O.W. BUNKER &                :
TRADING A/S, CHEMOIL LATIN AMERICA,              :
INC., ING BANK N.V.,                             :
                                                 :
                    Defendants:

-------------------------------------------------------------X

CLEARLAKE SHIPPING PTE LTD.,                     :
                                                 :
                    Plaintiffs,                  :
                                                 :
          -against-                              :          14-CV-9286  (VEC)
                                                 :
O.W. BUNKER (SWITZERLAND) SA,  O.W.              :
BUNKER USA INC., O.W. BUNKER NORTH               :
AMERICA INC., O.W. BUNKER HOLDING                :
NORTH AMERICA INC., WESTOIL MARINE               :
SERVICES, INC., ING BANK N.V.,                   :
                                                 :
                    Defendants:

-------------------------------------------------------------X
-------------------------------------------------------------X

CLEARLAKE SHIPPING PTE LTD,        :

                                             :

                       Plaintiff,        :

                                             :

               -against-           :        14-CV-9287  (VEC)

                                           :

O.W. BUNKER (SWITZERLAND) SA, O.W.  :
BUNKER USA INC., O.W. BUNKER NORTH  :
AMERICA INC., O.W. BUNKER HOLDING  :
NORTH AMERICA INC., NUSTAR ENERGY  :
SERVICES INC., ING BANK N.V.,        :

                                         :

                     Defendants:

-----------------------------------------------------------------X

BONNY GAS TRANSPORT LIMITED, as owner :
of the LNG FINIMA (IMO No. 7702401),    :

                                         :

                     Plaintiff,      :

                                       :        14-CV-9542  (VEC)

               -against-           :

                                         :

O.W. BUNKER GERMANY GMBH, NUSTAR  :
TERMINALS MARINE SERVICES N.V.,    :
NUSTAR ENERGY SERVICES, INC., ING    :
BANK N.V.,                     :

                                         :

                     Defendants.:

-----------------------------------------------------------------X

MT CAPE BIRD TANKSCHIFFAHRTS GMBH  :
& CO. KG, individually and on behalf of M/T  :
CAPE BIRD (IMO No. 9260067),       :

                                         :

                     Plaintiff,      :        14-CV-9646  (VEC)

                                         :

               -against-           :

                                         :

O.W. USA INC., O.W. NORTH AMERICA INC., :
HARLEY MARINE SERVICES, INC., ING    :
BANK N.V.,                     :

                                         :

                     Defendants. :

-----------------------------------------------------------------X

```
-------------------------------------------------------------X
SHV GAS SUPPLY & RISK MANAGEMENT     :
SAS AND EXMAR SHIPPING BVBA,          :
as owner of the WAREGEM (IMO No. 9659127),  :
                                      :
                    Plaintiffs,       :
                                      :          14-CV-9720  (VEC)
             -against-                :
                                      :
O.W. BUNKER USA, INC., O.W. BUNKER    :
HOLDING NORTH AMERICA INC., O.W.      :
BUNKER NORTH AMERICA INC., NUSTAR     :
ENERGY SERVICES, INC., ING BANK N.V.,  :
                                      :
                    Defendants.  :
-------------------------------------------------------------X
  HAPAG-LLOYD AKTIENGESELLSCHAFT,     :
                                      :
                    Plaintiff,        :
                                      :
             -against-                :          14-CV-9949 (VEC)
                                      :
U.S. OIL TRADING L.L.C., O.W. BUNKER  :
GERMANY GMBH, O.W. BUNKER &           :
TRADING A/S, ING BANK N.V., CREDIT    :
AGRICOLE S.A.,                        :
                                      :
                    Defendants.  :
-------------------------------------------------------------X
OSG SHIP MANAGEMENT, INC., and 1372   :
TANKER CORPORATION as owner of the M/V  :
OVERSEAS MULAN (IMO NO. 9230880),     :
                                      :
                    Plaintiffs,       :
                                      :          14-CV-9973 (VEC)
             -against-                :
                                      :
O.W. BUNKER USA INC., O.W. BUNKER     :
MIDDLE EAST DMCC, CHEMOIL             :
CORPORATION, CHEMOIL MIDDLE EAST      :
DMCC, GPS CHEMOIL LLC FZC, ING BANK   :
N.V.,                                 :
                                      :
                    Defendants.  :
-------------------------------------------------------------X

-------------------------------------------------------------
```

HAPAG-LLOYD AKTIENGESELLSCHAFT,   X
:
                         Plaintiff,  :
:
                      -against-        :          14-CV-10027 (VEC)
:
O'ROURKE MARINE SERVICES L.P., L.L.P.,  :
O.W. BUNKER GERMANY GMBH, O.W.    :
BUNKER USA, INC., ING BANK N.V.,     :
:
                     Defendants.  :

---------------------------------------------------------------:

CONTI 149 CONTI GUINEA, individually and on X
behalf of M/T CONTI GUINEA (IMO No.     :
9391402),                         :
:
                         Plaintiff,  :
:
                      -against-        :          14-CV-10089 (VEC)
:
O.W. BUNKER PANAMA S.A., O.W. BUNKER  :
USA INC., CLEMENTI PARK SHIPPING CO.   :
PTE LTD., ING BANK N.V.,            :
:
                     Defendants.  :

---------------------------------------------------------------:

NYK BULK & PROJECT CARRIERS LTD.,    X
individually and on behalf of M/V OCEAN   :
FRIEND (IMO No. 9401829),         :
:
                         Plaintiff,  :
:
                      -against-        :          14-CV-10090 (VEC)
:
O.W. BUNKER USA INC., NUSTAR ENERGY  :
SERVICES, INC., HARLEY MARINE GULF,   :
INC., ING BANK N.V.,              :
:
                     Defendants.  :

---------------------------------------------------------------:
                                   X

-----------------------------------------------------------------

4

NIPPON KAISHA LINE LIMITED, individually   X
and on behalf of M/V RIGEL LEADER (IMO   :
No.9604940),   :
                  Plaintiff,   :
  :
        -against-   :      14-CV-10091 (VEC)
  :
O.W. BUNKER USA INC., NUSTAR ENERGY   :
SERVICES, INC., KIRBY INLAND MARINE LP,:
ING BANK N.V.,   :
               Defendants.   :
-------------------------------------------------------------:

HAPAG-LLOYD AKTIENGESELLSCHAFT,   X
  :
                  Plaintiff,   :
  :
        -against-   :      15-CV-00190 (VEC)
  :
O.W. BUNKER NORTH AMERICA, INC., O.W. :
BUNKER GERMANY GMBH, O.W. BUNKER   :
USA, INC., ING BANK N.V.,   :
  :
               Defendants.   :
-------------------------------------------------------------:

APL CO. PTE LTD and AMERICAN   X
PRESIDENT LINES, LTD., individually and on   :
behalf of M/V APL SALALAH (IMO No.   :
9462029), M/V APL ENGLAND (IMO No.   :
9218650), M/V APL OAKLAND (IMO No.   :
9332250), M/V APL SOUTHHAMPTON (IMO   :
No. 9462017), M/V APL THAILAND (IMO No.   :
9077123), M/V APL CHINA (IMO No.   :
9074389), M/V APL EGYPT (IMO No.   :
9196905), M/V APL PHILIPPINES (IMO No.   :
9077276), and, M/V APL YANGSHAN (IMO   :
No. 9462031),   :
               Plaintiffs,   :      15-CV-00620 (VEC)
  :
        -against-   :
  :
O.W. BUNKER FAR EAST (SINGAPORE) PTE. :
LTD, O.W. BUNKER USA INC., O.W. BUNKER :
NORTH AMERICA INC., WESTOIL MARINE   :
SERVICES, INC., ING BANK N.V.,   :
               Defendants.   :
-------------------------------------------------------------:
-------------------------------------------------------------X

CANPOTEX SHIPPING SERVICES LIMITED,   X
individually and on behalf of M/V GLOBAL   :
PHOENIX (IMO No. 9565053), M/V CMB   :
GIULIA (IMO No. 9588419), and M/V ASTON   :
TRADER II (IMO No. 9392731),   
   :
                   Plaintiffs,   :
   :
              -against-       :       15-CV-1351 (VEC)
   :
O.W. BUNKERS (UK) LIMITED, O.W. SUPPLY :
& TRADING A/S, CHEVRON MARINE   :
PRODUCTS LLC, ING BANK N.V.,   :
   :
              Defendants.   :
---------------------------------------------------------------:

STAR TANKERS INC, individually and on behalf X
of M/V SHARON SEA (IMO No. 9316232),   :
   :
                 Plaintiff,   :
   :
              -against-       :       15-CV-2090 (VEC)
   :
O.W. BUNKER PANAMA S.A., O.W. BUNKER :
USA INC., O.W. BUNKER NORTH AMERICA   :
INC., O.W. BUNKER HOLDING NORTH   :
AMERICA INC., ING BANK N.V.,   :
   :
              Defendants.   :
---------------------------------------------------------------:

SK SHIPPING CO., LTD., and SK B&T PTE.   :
LTD., individually and on behalf of M/V AZURIT :
(IMO No. 9551703),   
   :
                 Plaintiffs,   :
   :
              -against-       :       15-CV-2141 (VEC)
   :
NUSTAR ENERGY SERVICES, INC., O.W.   :
BUNKER MIDDLE EAST DMCC, O.W.   :
BUNKER USA INC., ING BANK N.V.,   :
   :
              Defendants.   :
---------------------------------------------------------------:
   X

-----------------------------------------------------------------

6

SIGMA TANKERS INC, individually and on               X
behalf of M/V DUBAI ATTRACTION (IMO No.              :
9422536), M/V ORCHID (IMO No. 9624079),              :
                                                     :
                              Plaintiffs,            :
                                                     :
                   -against-                         :        15-CV-2733 (VEC)
                                                     :
O.W. BUNKER PANAMA S.A., O.W. BUNKER                 :
USA INC., O.W. BUNKER NORTH AMERICA                  :
INC., O.W. BUNKER HOLDING NORTH                      :
AMERICA INC., ING BANK N.V.,                         :
                                                     :
                              Defendants.            :
-----------------------------------------------------------:
BAERE MARITIME LLC, individually and on              X
behalf of M/V YASA GOLDEN HORN (IMO No.              :
9334040),                                            :
                                                     :
                              Plaintiff,             :
                                                     :
                   -against-                         :        15-CV-2734 (VEC)
                                                     :
O.W. BUNKER PANAMA S.A., O.W. BUNKER                 :
USA INC., O.W. BUNKER NORTH AMERICA                  :
INC., O.W. BUNKER HOLDING NORTH                      :
AMERICA INC., ING BANK N.V.,                         :
                                                     :
                              Defendants.            :
-----------------------------------------------------------:
MSC MEDITERRANEAN SHIPPING                           X
COMPANY S.A.,                                        :
                                                     :
                              Plaintiff,             :
                                                     :
                   -against-                         :        15-CV-3221 (VEC)
                                                     :
O.W. BUNKER NORTH AMERICA INC., O.W.                 :
BUNKER USA, INC., O.W. BUNKER                        :
(SWITZERLAND) S.A., ING BANK N.V.,                   :
HARLEY MARINE NY, INC.                               :
                                                     :
                              Defendants.            :
-----------------------------------------------------------:
                                                     X

-----------------------------------------------------------

O.W. BUNKER USA INC. and O.W. BUNKER    X
NORTH AMERICA INC.,                      :
                                            :

                 Plaintiffs,      :

                  -against-       :            15-CV-3471 (VEC)

COSCO PIRAEUS, I.M.O. NO. 9484364,       :
her engines, tackle, equipment, and furnishings, *in*   :
*rem*,                                         :

                 Defendant.     :
-----------------------------------------------------------:

O.W. BUNKER USA INC.,               X
                                         :

                  Plaintiff,       :

                  -against-       :            15-CV-3988 (VEC)

M/V BAKKEDAL *in rem,*             :

                 Defendant.     :
-----------------------------------------------------------:

KAWASAKI KISEN KAISHA, LTD and       X
CATALINA SHIPPING SA, as owner of the M/V   :
Bremen Bridge (IMO No. 9367188),         :

                 Plaintiffs,      :

                  -against-       :
                                            :            15-CV-4138 (VEC)

O.W. BUNKER MIDDLE EAST DMCC, O.W.     :
BUNKER NORTH AMERICA, INC., ING BANK :
N.V., HARLEY MARINE NY, INC., and PAUL   :
DAVID COPLEY, IAN DAVID GREEN AND    :
ANTHONY VICTOR LOMAS IN THEIR      :
CAPACITIES AS JOINT RECEIVERS OF THE   :
SECURITY ASSETS,                  :

                 Defendants     :
-----------------------------------------------------------:
                                            X

MEMORANDUM OPINION & ORDER

VALERIE CAPRONI, United States District Judge:

On November 7, 2014, one of the world's largest suppliers of shipping fuel, O.W. Bunker & Trading A/S, and certain of its Danish subsidiaries and affiliates filed for bankruptcy in Denmark following significant risk management losses and the revelation of internal fraud.  That filing set off a cascading series of other bankruptcies across the globe by other O.W. Bunker & Trading A/S subsidiaries and affiliates (together with O.W. Bunker & Trading A/S, the "O.W. Entities").  On November 13, 2014, O.W. Bunker USA, Inc., O.W. Bunker Holding North America Inc., and O.W. Bunker North America Inc. (the "U.S. Debtors") filed voluntary petitions for Chapter 11 relief in the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court").  Those cases are jointly administered under the caption *In re O.W. Bunker Holding North America Inc.*, Case No. 14-51720 (AHWS) (Bankr. D. Conn. filed Nov. 13, 2014).  On November 20, 2014, *UPT Pool Ltd. v. Dynamic Oil Trading (Singapore) Pte. Ltd. et al*., 14-CV-9262 (VEC), an interpleader action arising out of payments owed for fuel bunkers purchased through the U.S. Debtors prior to November 13, 2014, was filed in this Court.  Since then, twenty-five (and counting) other interpleader actions involving fuel bunker transactions made through an O.W. Bunker Entity (the "Interpleader Actions") have been filed in or transferred to the Southern District of New York and referred to this Court as related to the *UPT Pool Ltd.* action.

Together, the Interpleader Actions present interesting and apparently novel questions regarding the interplay among United States bankruptcy law, maritime law and the federal interpleader statutes.  While each case involves different parties, slightly different facts, and, to some extent, unique legal issues, an overarching question presented in all of the cases is whether this Court has subject matter jurisdiction over the Interpleader Actions.  After reviewing the

9

various submissions addressing this issue, the Court finds that it has subject matter jurisdiction over the Interpleader Actions.

## BACKGROUND

The Plaintiffs in the Interpleader Actions[1] are owners and charterers (the "Vessel Interests") of various shipping vessels (the "Vessels") that contracted with one or more of the O.W. Entities, either directly or through a broker, for the supply of fuel.  In most cases, an O.W. Entitiy did not provide the fuel directly but contracted with a third party fuel supplier (the "Fuel Supplier") that physically delivered the bunkers to the Vessel.  Because of the O.W. Entities' role as the "middle-man" in many of these transactions, even though Plaintiffs only made a single purchase of fuel bunkers, both the O.W. Entities and the Fuel Suppliers assert that they are entitled to payment for the provision of fuel.[2]  Given the bankruptcy filings, Plaintiffs fear that if they remit payment to the O.W. Entity that is demanding payment (almost all of which are now in bankruptcy somewhere in the world), the portion of the payment that is due to the third party Fuel Supplier will get tied up in the bankruptcy rather than being promptly remitted to the Fuel Supplier as would have occured in the ordinary, non-bankruptcy course of business.[3]  The Fuel Suppliers share that concern.

Further complicating matters, pursuant to an Omnibus Security Agreement dated December 19, 2013 (the "2013 Security Agreement"), certain O.W. Entities allegedly assigned

---

[1]    In a few actions, the initial Complaint was filed by a claimant against a Vessel or Vessel Interest to collect unpaid amounts for fuel, and the interpleader was asserted as a counterclaim.  *See, e.g.*, *O.W. Bunker USA Inc. et al. v. Cosco Piraeus, I.M.O. NO. 9484364*, 15-CV-3471 (VEC).  Regardless of the few instances in which the Vessel Interest is technically a Defendant and Counterclaim Plaintiff, the Vessel Interests will be referred to as Plaintiffs.

[2]    Additionally, in several actions,  barging companies that facilitated the delivery of the fuel bunkers at issue are also claimants.  *See, e.g.*, *Kawasaki Kisen Kaisha, Ltd. et al v. Ow Bunker Middle East DMCC et al*., 15-CV-4138 (VEC).

[3]    Money is, of course, fungible.  In the ordinary course of business, the dollars that would have been paid to an O.W. Entity would have become working capital for the O.W. Entity until it paid the invoice it received from the physical Fuel Supplier.

their rights in respect of certain supply contracts, including many of the fuel supply contracts at issue here, as security to ING Bank N.V. ("ING").  As a result, ING claims that, rather than paying the O.W. Entities with whom the Plaintiffs (or their brokers) contracted, Plaintiffs should remit payments owed for the provision of shipping fuel directly to ING.  Plaintiffs have, in many cases, received competing demands for payment from the O.W. Entities, Fuel Suppliers and ING, thereby potentially exposing them to triple liability.  In other cases, Plaintiffs have received multiple demands for payment of the same invoice from different O.W. Entities based on intercompany debts and claims that have yet to be resolved.

While it might make perfect sense to a U.S. bankruptcy practitioner to advise the creditors of a bankrupt company to wait in line with the other creditors for the Chapter 11 case to proceed, certain Fuel Suppliers believe that their rights under maritime law do not relegate them to standing patiently in line with all of O.W. Bunker's other unsecured creditors in the U.S. bankruptcy proceedings.  As the providers of "necessaries" to maritime Vessels, the Fuel Suppliers believe that they have maritime liens that can be enforced directly against the Vessels, including by arrest, in order to collect the sums due, regardless of whether Plaintiffs have already paid the contractually-owed amounts to the O.W. Entities with whom they or their brokers contracted.  Because the O.W. Entities also believe that they have maritime liens protecting their right to payment, the Plaintiffs' quandary is clear: they are more than happy to pay for the fuel bunkers they received, but they do not want—and this seems imminently reasonable—to be required to pay more than 100% of the value of the bunkers as their Vessels are arrested *seriatim* by each claimant that is owed money for the bunkers.[4]

---

[4]       The arrest of a vessel can wreak havoc on the vessel owner or charter party as delays in sailing can result in significant financial penalties from other customers.  That risk provides obvious leverage to whomever arrests the vessel.  While the availability of a maritime lien for a provider of necessaries makes perfect sense as a general policy

To avoid a "Sophie's Choice" between, on the one hand, having their Vessels arrested or, on the other hand, being forced to pay or post bonds to secure double or triple the amounts for which they originally contracted, Plaintiffs have sought relief from this Court under the federal interpleader statutes, which are specifically designed to protect stakeholders facing multiple claims for a single obligation. In most cases, the Court has granted Plaintiffs leave to deposit into the Court's Registry a bond or cash deposit equal to the full amount owed on their fuel supply contracts, plus 6% interest for the first year. *See, e.g.*, Order, *SHV Gas Supply & Risk Management SAS et al. v. O.W. Bunker USA, Inc. et al.*, 14-CV-9720 (VEC) ("*SHV Gas*") (S.D.N.Y. Dec. 11, 2014), Dkt. 11.

In conjunction with the deposit orders, the Court has, in most cases, granted Plaintiffs' motions for the entry of restraining orders pursuant to 28 U.S.C. § 2361, which generally enjoin Defendants from:

> institing or prosecuting any proceeding in any state court, or in any United States District Court, affecting the property and *res* involved in this action of interpleader, including but not limited to the arrest or attachment of the subject Vessel pursuant to Supplemental Admiralty Rule C or Rule B or other laws to enforce claimants' maritime lien claims arising from the bunker delivery until the further order of the court.

*See, e.g.*, Order, *SHV Gas*, (S.D.N.Y. Dec. 11, 2014), Dkt. 12. The restraining orders further provide that "any claimant may, upon proper motion allowing adequate time for briefing, request that this Order be set aside or modified." *Id.*

In responding to the Interpleader Actions, the O.W. Entities, Fuel Suppliers and ING have asserted various arguments and defenses. Following an omnibus conference on December 18, 2014, during which counsel for various parties raised issues relating to, *inter alia,* this

---

matter (and it certainly made sense historically), it creates obvious unfairness for the Vessel Interests in the current, and seemingly unprecedented, situation.

Court's jurisidiction, the Court directed the parties to brief  "whether it is proper for the Court to permit [the Vessel Interests] to initiate interpleader actions with injunctive relief under circumstances where the vessel at issue has not yet arrived, and is not scheduled to imminently arrive, at a port in the district."  Order, *SHV Gas*, (S.D.N.Y. Dec. 19, 2014), Dkt. 21 (the "December 19 Order").[5]

Because no party was able to find a case raising the unique issues presented here (*i.e.*, an interpleader action where one or more claimants are in bankruptcy, and the bankrupt entities and other claimants are asserting maritime lien claims for the same supply of goods to a vessel), on February 20, 2015, the Court directed the parties to brief further the question of whether the Court has subject matter jurisdiction over these actions.  Order, *SHV Gas,* (S.D.N.Y. Feb. 20, 2015), Dkt. 77.  On February 27, 2015, Nustar Energy Services Inc. and U.S. Oil Trading LLC (the "Objecting Claimants") submitted a joint brief arguing that the Court lacks subject matter jurisdiction because the requirements of 28 U.S.C. § 1335 have not been met.  Mem. of Law By Nustar Energy Services and U.S. Oil Trading LLC Pursuant to the Court's Feb. 20, 2015 Order, *SHV Gas*, (S.D.N.Y. Feb. 27, 2015), Dkt. 80 (the "Objecting Claimants' Brief").  Based on that premise, they argue that 28 U.S.C. § 2361 does not authorize the Court to enjoin Defendants from enforcing their maritime lien claims.  *Id.*  On March 6, 2015, the Vessel Interests and U.S. Debtors filed separate briefs arguing that this Court does have subject matter jurisdiction. Plaintiffs' Joint Mem. of Law Pursuant to the Court's Order Dated Feb. 20, 2015 Concerning This Court's Subject Matter Jurisdiction, *SHV Gas*, (S.D.N.Y. Mar. 6, 2015), Dkt. 82; Mem. of Law by O.W. Bunker Holding N. Am. Inc. et al. Pursuant to the Court's Order Dated Feb. 20, 2015, *SHV Gas*, (S.D.N.Y. Mar. 6, 2015), Dkt. 83 (the "U.S. Debtors' Brief").

---

[5]     Briefing was also ordered on why these matters should not be transferred to the District of Connecticut where the U.S. Debtors' Chapter XI proceeding is pending.  For a variety of reasons, that briefing has been stayed.

**DISCUSSION**

I.     **The Statutory Framework**

Four federal statutes are critical to the analysis of this Court's subject matter jurisdiction: 28 U.S.C. § 1333, 28 U.S.C. § 1335, 28 U.S.C. § 2361 and 46 U.S.C. § 31341.

Section 1333 of Title 28 provides the statutory basis for the Court's admiralty and maritime jurisdiction.

Section 1335 of Title 28, the statutory basis for interpleader, is "remedial and to be liberally construed." *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 533 (1967).  A district court has subject matter jurisdiction over an interpleader action under 28 U.S.C. § 1335 when an interpleading party is "under any obligation written or unwritten to the amount of $500 or more," if there is minimal diversity of citizenship among adverse claimants who "are claiming or may claim to be entitled to such money or property."  28 U.S.C. § 1335(a).  The "action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another."  28 U.S.C. § 1335(b).  An interpleader action is proper even when the interpleading party is not "wholly disinterested" or faces independent claims that "aris[e] out of distinct and unrelated legal obligations" and potentially exceed the value of the fund.  *Ashton v. Josephine Bay Paul and C. Michael Paul Foundation, Inc.*, 918 F.2d 1065, 1069 (2d Cir. 1990) (citations omitted).  To commence an interpleader, the interpleading party must deposit the property, money or amount due under the obligation that is the subject matter of the action into the registry of the court (or provide a bond for the same).  28 U.S.C. § 1335(a).  The "effect of interpleader is to confine the total litigation to a single forum and proceeding."  *State Farm Fire & Casualty Co.*, 386 U.S. at 534.

In order to ensure the litigation is actually confined to a single forum, 28 U.S.C. § 2361 authorizes a district court to restrain all claimants in the interpleader action from "instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until final order of the court." *See Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 74 (1939) (an anti-suit injunction is "essential to the protection of the interpleader jurisdiction"). The Court may enjoin claimants from litigating claims based on independent legal theories (whether or not actions have been commenced in other forums) and thereafter can enjoin permanently the interpleader defendants' prosecution of those claims. *Ashton*, 918 F.2d at 1069-70 (quoting *New York Life Ins. Co. v. Connecticut Development Auth.*, 700 F.2d 91, 96 (2d Cir. 1983)).

Finally, under 46 U.S.C. § 31342, any entity that supplies a vessel with "necessaries," such as shipping fuel, "on the order of the owner or a person authorized by the owner" has a maritime lien on the vessel and is entitled to bring a civil action *in rem* to enforce that lien. "Unlike other security arrangements, the maritime lien is for the benefit of both the ship and its creditors." *Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.*, 982 F.2d 765, 768 (2d Cir. 1992). "On the one hand, it enables ships to obtain repairs and supplies on its own account that might not otherwise be available." *Id.* (citing *Piedmont & George's Creek Coal C. v. Seaboard Fisheries Co.*, 254 U.S. 1, 9 (1920)). "On the other hand, it gives the creditor a special property in the ship, which subsists from the moment the debt arises, and it gives him a right to have the ship sold so that his debt may be paid out of the proceeds of the sale. It is a right in the vessel, a jus in re." *Id.* (citations and internal quotations omitted).

## II.     The District Court has Subject Matter Jurisdiction Under 28 U.S.C. § 1333

Because the claims raised in the Interpleader Actions relate to the provision of necessaries to Vessels resulting in the purported creation of maritime lien claims and potential *in*

*personam* claims based on maritime contracts, no party disputes that the Interpleader Actions are properly brought pursuant to the Court's admiralty and maritime jurisdiction.

### III.    The District Court has Subject Matter Jurisdiction Under 28 U.S.C. § 1335

The Objecting Claimants argue that the Court lacks subject matter jurisdiction to adjudicate their statutory *in rem* claims against the Vessels under 28 U.S.C. § 1335 and that the Court lacks authority under 28 U.S.C. § 2361 to enjoin them from enforcing their *in rem* claims against the Vessels.  Obj. Claimants' Br. at 2.  The fulcrum of their argument is that their *in rem* claims against the Vessels are "separate and distinct" from any *in personam* claims against the Vessel Interests and therefore are not amenable to resolution as part of an interpleader, which requires adverse claims arising out of a single obligation.  *Id.*  Because (they argue) only the Vessel Interests' *in personam* obligations are the proper subject of the Interpleader Actions, the Court lacks authority to enjoin the commencement of  *in rem* proceedings in other jurisdictions. *Id.*  In support of this position, the Objecting Claimants argue that the funds or bonds deposited in the Court's registry satisfy only the Vessel Interests' *in personam* obligations but not the Vessels' *in rem* obligations, which can only be satisfied by the Vessels themselves "or the amount due under the [V]essels' separate and distinct obligations *in rem* to pay defendants for the bunker fuel delivered to the [V]essels." *Id.* at 3.  In addition, the Objecting Claimants argue that the Court could not adjudicate the *in rem* claims against the Vessels in any event because, in many cases, the Vessels were never arrested or present in this jurisdiction and the Objecting Claimants did not consent to substitute the amounts on deposit for the *res* that are the subjects of their maritime liens.  *Id.* at 2.  Finally, the Objecting Claimants argue that because their *in rem* claims against the Vessels are not the "obligations" involved in the Interpleader Actions and the Vessels are not parties to the Interpleader Actions, an injunction preventing them from enforcing

their *in rem* claims by arresting Vessels in other jurisdictions exceeds the Court's authority under 28 U.S.C. § 2361.

The Objecting Claimants' argument that their *in rem* claims against the Vessels are "separate and distinct" from the *in personam* claims against the Vessel Interests is without merit. Both the Objecting Claimants' *in rem* claims against the Vessels as well as any *in personam* claims that they or others may ultimately choose to assert against the Vessel Owners spring from a single event: the Objecting Claimants' provision of fuel to the Vessels pursuant to a contract, or series of contracts, between or among the Objecting Claimants, O.W. Entities, Vessel Interests and, in some cases, other third-party brokers. When the O.W. Entities commenced bankruptcy proceedings and the Objecting Claimants found themselves in a sea of unsecured creditors, the Objecting Claimants looked for a better solution. While they are unsecured creditors of the O.W. Entities, they are effectively secured creditors of the non-bankrupt Vessel and, therefore, in a position to exert tremendous leverage against the Vessel Interests, whose only mistake was to purchase fuel through an O.W. Entity in the weeks preceeding the company's unexpected and rapid demise. It did not take a brilliant legal strategist to figure out that, in lieu of standing in line in the Chapter 11 proceeding, the Objecting Claimants could jump that line by proceeding directly against the Vessel, *in rem,* pursuant to 46 U.S.C. § 31342 to collect the amounts due.

But because there is only one underlying debt, any interpleaded *in personam* claims against the Vessel Interests are merely alternative procedural devices to obtain the same relief as would be obtained by arresting the Vessel. *See* Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule C")(1)(b). "Under the admiralty law of the United States, *in personam* and *in rem* actions may arise from the same claim, and may be brought separately or in the same suit." *Belcher Co. of Alabama, Inc. v. M/V Maratha Mariner*, 724 F.2d 1161, 1164 (5th Cir. 1984) (citing Rule C(1)(b)). *Cf. Burns Bros. v. the Central R.R. of*

*New Jersey*, 202 F.2d 910, 912-13 (2d Cir. 1953) (Hand, J.) (even if a plaintiff has a right to bring an admiralty action *in rem* or a suit *in personam* as "alternative remedies" against different defendants, there is only one "cause of action" when there is a single "interest invaded" (internal quotations omitted)).

Indeed, the Complaints filed in these actions note the existence of both competing *in personam* and *in rem* claims arising out of the fuel transactions at issue; the restraining orders likewise recognize that interpleader relief is necessary to protect the Vessel Interests from "multiple litigation against [the Vessel Interests] for the same [*in personam*] claim and against the Vessel *in rem* for payment of the same fuel bunker delivery."  *See, e.g.*, Order, *SHV Gas*, (S.D.N.Y. Dec. 11, 2014), Dkt. 12.  And significantly, the Objecting Claimants and other Fuel Suppliers are not the only entities asserting that the unpaid fuel bunker invoices give rise to maritime lien claims against the Vessels *in rem*.  The U.S. Debtors have also asserted maritime lien claims against the Vessels,[6] yet they recognize that because those claims arise out of a single obligation for the purchase of fuel, they are all amenable to adjudication under the federal interpleader statutes.  *See* U.S. Debtors' Br. at 3-5.

The Objecting Claimants contend that the "obligations" of the Vessels are distinct from the "obligations" of the Vessel Interests.  Obj. Claimants' Br. at 5.  That argument fails for the same reasons.  "The *in rem* liability of a ship is a fiction; the reality is that the owner, not the vessel, pays the judgment."  *Insurance Co. of N. America v. S/S American Argosy*, 732 F.2d 299,

---

[6]       While the U.S. Debtors have asserted maritime lien claims, *in rem*, arguing that a claimant need not be a physical supplier in order to have "provid[ed] necessaries" under 46 U.S.C. § 31342, the parties have yet to brief, and the Court has yet to decide, questions relating to the validity or priority of competing maritime lien claims as between the O.W. Entities, Fuel Suppliers or any other parties.

302 (2d Cir. 1984).  The source of the obligations owed by the Vessel Interests and the Vessels,[7]

whether the debt is ultimately owed to the Fuel Suppliers, O.W. Entities, ING, barging service

providers or some combination thereof, is the Vessel Interest's underlying purchase of fuel.

Because the *in personam* claims against the Vessel Interests and the *in rem* claims against the

Vessels arise out of the same debt, they are "inextricably interrelated," and therefore subject to

interpleader.  *See Royal School Laboratories, Inc. v. Town of Watertown*, 358 F.2d 813 (2d Cir.

1966) (Friendly, J.) (interpleader jurisdiction proper when statutory materialmen lien claim and

breach of contract claim arose out of a single contract because the claims were were

"inextricably interrelated;" allowing the suits to proceed separately created the risk of "two

recoveries against [the plaintiff] for the same enrichment"); *see also Active Fire Sprinkler Corp.*

*v. U.S. Postal Serv.,* 811 F.2d 747, 757-58 (2d Cir. 1987) (noting, with respect to a suit brought

by a construction subcontractor against the United States Postal Service for an unpaid balance

owed to the general contractor that: "A procedural device — interpleader — exists to protect a

party that . . . finds itself beset by competing claims to a sum of money that it holds. . . . When

USPS became aware of [the subcontractor's] claim, it was placed on notice of the possibility of a

recovery against it.  It also should have recognized the risk that it faced if it paid the money out

to other parties.").  It follows that a deposit into the Court's registry of an amount sufficient to

---

[7]      The Objecting Claimants question why the Vessel's owner and charterer would both appear as Plaintiffs, as
they have in some of the Interpleader Actions, if the *in personam* and *in rem* claims were not treated separately.
Obj. Claimants' Br. at 3.  Rule C(1)(b) provides that a maritime lien may be enforced by proceeding *in personam*
against any person who "may be liable" for the lien as an additional or alternative remedy to the action *in rem*
against the vessel.  If both the owner and the charterer "may be liable" for the lien  — the owner through the Vessel
and the charterer as the party who procured the bunkers — then it makes perfect sense for both entities to appear as
plaintiffs when a single obligation is due.  *Accord Rainbow Line, Inc. v. M/V Tequila*, 480 F.2d 1024, 1027-28 (2d
Cir. 1973) (breach of contract by a charterer gives rise to a maritime lien on vessel and the lien exists in part to hold
the charterparty responsible for the performance of the contract).

satisfy the Vessel Interests' *in personam* obligations is sufficient to satisfy the Vessels' *in rem*

obligations for purposes of the Court's subject matter jurisdiction under Section 1335.[8]

The Objecting Claimants cite *S.E.L. Maduro (Florida), Inc. v. M/V Antonio de Gastaneta*, 833 F.2d 1477 (11th Cir. 1987), to illustrate the distinction between the obligations of a vessel *in rem* and a vessel owner *in personam*.  Obj. Claimants' Br. at 3-5.  The distinct obligations of the vessel and vessel owner in that case are of a completely different nature than those of the Vessels and Vessel Interests alleged here.  In *S.E.L. Maduro*, the plaintiff ("Maduro") had brought contractual claims *in personam* against the vessel owner ("Naviera Gorbea") in a prior suit: one claim alleged breach of an agreement to pay the debt of a charterparty for the supply of necessaries and the other alleged fraudulent inducement to the agreement.  833 F.2d at 1481-82.  The jury found for Naviera Gorbea on the breach of contract claim.  *Id.*  The Eleventh Circuit held that *res judicata* did not bar a subsequent action *in rem* against the vessel to enforce a maritime lien because the "primary right at stake" in the breach of contract claim was "not the same as the primary right at stake" in the *in rem* claim.  *Id.* at 1482. The court explained that "an action on a shipowner's promise to pay the debt of the vessel is different from an action against the vessel to recover the value of services rendered" because "the lien attaches to the vessel even if the vessel owner has not personally contracted."  *Id.*

Here, there were no contractual agreements to pay the debts of the Vessels separate and apart from the underlying fuel supply contracts that give rise to the maritime liens and, by extension, the *in rem* claims against the Vessels and the *in personam* claims against the Vessel

---

[8]   Although the Fuel Suppliers argue that their *in rem* claims against the Vessels must be "secure" in order for the Court to have subject matter jurisdiction under 28 U.S.C. § 1335, there is no such such requirement under this statute.  Section 1335 only requires that the interpleading party pay "the amount due under such obligation into the registry of the court, there to abide the judgment of the court" or give "a bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper."  28 U.S.C. § 1335(a)(2).  The Vessel Interests either deposited funds or posted bonds measured by the amount of their "obligations" under the fuel supply contracts.  That is sufficient to satisfy the requirements of Section 1335.

Interests.  *See Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 107 (2d Cir. 2002)

(where *in personam* claim against vessel owner failed in arbitration, plaintiff could not proceed

*in rem* against the vessel on the same underlying claim because the "[t]he *in rem* claim serves as

a way of making sure that a plaintiff can recover"); *accord Continental Grain Co. v. The FBL-

585*, 364 U.S. 19, 25-26 (1960) (noting in dicta that courts often ignore the fiction of *in rem*

liability in applying the doctrine of *res judicata* as between an *in personam* action against an

owner and an *in rem* action against his ship) (citations omitted); *Burns Bros.*, 202 F.2d at 913 ("a

decree *in rem* is a bar to a suit *in personam*," and the rule "work[s] both ways" because

"[d]isputes arise between human beings, not inanimate things; and it would be absurd to give the

beaten party another chance because on second trial he appears as the claimant to a vessel that is,

and can be, nothing but the measure of his stake in the controversy.").  *Cf. Central Hudson Gas

and Electric Corp. v. Empresa Naviera Santa, S.A.*, 845 F. Supp. 150, 152-53 (S.D.N.Y. 1994)

(holding that *res judicata* did not bar an *in personam* suit against a charterer to collect unpaid

portions of an *in rem* judgment against the vessel for which the charterer was responsible).

        The *in rem* nature of the claims against the Vessels does not affect the Court's subject

matter jurisdiction under Section 1335.  "It is well-settled that subject matter jurisdiction and *in

rem* jurisdiction are distinct."  *Kristensons-Petroleum, Inc. v. Sealock Tanker Co., Ltd.*, 304 F.

Supp. 2d 584, 589 (S.D.N.Y. 2004) (citation omitted).  "Accordingly, any purported absence of

*in rem* jurisdiction would not vitiate subject matter jurisdiction" if it otherwise existed.  *Id.*  On

this point, *Kristensons-Petroelum* is instructive.  In *Kristensons-Petroleum*, the plaintiff

Kristens-Petroleum, Inc. ("KPI") supplied fuel bunkers to the vessel M/T Blanc pursuant to fuel

supply contracts with Sealock Tanker Co., Ltd. ("Sealock"), the charterer of M/T Blanc.  *Id.* at

586.  When Sealock failed to pay for the bunkers, KPI initiated *in rem* proceedings against the

M/T Blanc in Belgium by obtaining an order from a Belgian court authorizing the arrest of the

vessel to enforce a maritime lien pursuant to United States general maritime law. *Id.* The vessel was arrested, and Blanc Navigation ("Blanc"), the owner of the M/T Blanc, issued a bank guarantee to obtain the release of the vessel and challenged KPI's claim in proceedings in Belgium. *Id.* at 586-87.

Meanwhile, KPI initiated an *in personam* proceeding in this district against Sealock for breach of contract. *Id.* at 587. When Sealock failed to answer or appear, the court granted Blanc's motion to intervene. *Id.* Blanc answered and counterclaimed for a declaration that KPI did not posses a maritime lien under the fuel supply contracts and had no right to proceed *in rem* against the M/T Blanc by arrest in Belgium. *Id.* KPI moved to dismiss the counterclaim, in part because the court lacked *in rem* jurisdiction over the vessel. *Id.* The court explained that the counterclaim did not "rely on the existence of *in rem* jurisdiction and that "the *in rem* jurisdictional requirements [were] inapplicable" because:

> An "*in rem*" proceeding is one in which "a vessel or thing is itself treated as the offender and made defendant by name or description in order to enforce a lien." *Madruga v. Superior Court State of California in and for San Diego County*, 346 U.S. 556, 560 (1954). "[I]n rem jurisdiction in admiralty exists only to enforce a maritime lien." *Rainbow Line, Inc. v. M/V Tequila*, 480 F.2d 1024, 1028 (2d Cir. 1973). "It is axiomatic that *in rem* jurisdiction exists in an action only where the subject matter of the action, or an appropriate substitute thereof, is within the jurisdiction of the court in which the action lies. Thus, where a vessel is the target of an *in rem* action in admiralty, it must be both within the territorial jurisdiction of the court hearing the cause and subject to the order of the court through process of arrest." *In re Millenium Seacarriers, Inc.*, 275 B.R. 690, 698 (S.D.N.Y. 2002) (quoting *American Bank of Wage Claims v. Registry of the District Court of Guam,* 431 F.2d 1215, 1218 (9th Cir. 1970) (internal quotations omitted)). As opposed to actions in which parties seek to enforce maritime liens against vessels, thus requiring *in rem* jurisdiction, Blanc's counterclaim alleges no claim against the M/T Blanc. Rather than seeking enforcement of a lien against its vessel, Blanc seeks a determination that no such lien exists. In essence, Blanc is asserting the opposite of an *in rem* claim: it already owns the vessel and is arguing that KPI's lien on the vessel is invalid. Moreover, as the parties themselves are before the Court, it is irrelevant that the vessel is not in this jurisdiction.

*Id.* at 589-90.  The same is true here.  In the context of the Interpleader Actions, the Interpleader

Actions are not actions to "enforce" maritime liens against the Vessels, although it is certainly

within the Court's admiralty jurisdiction to determine, in the context of the Interpleader Actions,

whether such liens are valid.  *In rem* jurisdiction over the Vessels is irrelevant in actions to

declare the validity and priority of competing maritime liens brought by the vessel owner or

charterer.[9]  As a result, neither arrest of the Vessels within the Court's jurisdiction nor the Fuel

Suppliers' consent are required to exercise subject matter jurisdiction over the *in rem* claims.

Because all of the requirements of 28 U.S.C. § 1335 are satisfied, the Court has subject

matter jurisdiction to adjudicate the claims in each of the Interpleader Actions.

### IV.   The Anti-Suit Injunction Is Within the Court's Authority Under 28 U.S.C. § 2361

If interpleader jurisdiction is proper under Section 1335, then the Court may restrain all

"claimants" from instituting or prosecuting any proceeding that may "affect" the subject matter

of the interpleader to "protect the stakeholder from vexatious and multiple litigation."  *State*

*Farm Fire & Casualty Co.*, 386 U.S. at 534; 28 U.S.C. § 2361.  The Objecting Claimants argue

that the injunction against arresting vessels in other jurisdictions exceeds the Court's authority

under Section 2361 because the *in rem* claims against the vessels are not the "obligations

involved in the interpleader actions as a matter of law."  Obj. Claimants' Br. at 1.  As the Court

has already explained, this argument is a non-starter.  To the extent that the obligations are

distinct, however, the Court has broad discretion under Section 2361 to enjoin the prosecution of

claims that arise out of the same dispute as the *in personam* claims and claims that may exceed

---

[9]      In *Kristensons-Petroleum*, the Court had personal jurisdiction over the fuel supplier because it was the plaintiff in the underlying breach of contract action.  Some of the objecting fuel suppliers dispute whether the Court has personal jurisdiction over them.  That issue is a separate question from whether the Court has subject matter jurisdiction under Section 1335 and is being briefed separately by any party that is contesting personal jurisdiction.

the value of the interpleaded fund to accomplish "the needs of orderly contest with respect to the fund." *State Farm Fire & Casualty Co.*, 386 U.S. at 534; *Ashton*, 918 F.2d at 1069-70.  The Objecting Claimants' *in rem* claims against the Vessels fit squarely within this description.

The Objecting Claimants' argument that it is not equitable to "force" them to litigate their *in rem* claims in this forum ignores the fact that Section 2361's anti-suit injunction is specifically designed for this purpose.  Obj. Claimants' Br. at 6.[10]  An anti-suit injunction furthers the equitable interests served by interpleader by consolidating all claims into one proceeding and preventing a claimant from racing to judgment in another forum.  *See State Farm Fire & Casualty Co.*, 386 U.S. at 532-33 (rejecting the argument that the interpleading party must wait until claimants have reduced their claims to judgment to commence an interpleader out of "[c]onsiderations of judicial administration").  Again, the *in rem* nature of the Objecting Claimants' maritime liens does not undermine the Court's authority.  Moreover, the Supreme Court has expressly held that an action *in rem* against a vessel and an action *in personam* against the vessel's owner arising out of a single occurrence may be treated as "inseparable parts of one single 'civil action.'"  *Continental Grain Co.*, 564 U.S. at 26 (interpreting the federal venue transfer statute).  In *Continental Grain Co.*, the Supreme Court criticized overly technical distinctions between civil actions *in rem* and *in personam* in light of "admiralty's approach to do justice with slight regard to formal matters" — particularly when applying the legal fiction

---

[10]      It is ironic that the Objecting Claimants seek to rely on an equitable argument inasmuch as their entire approach to this case rests on the inequitable premise that if anyone should be harmed financially from the bankruptcy of O.W. Bunker, it should be the Vessel Interests — who simply purchased fuel from a company that went bankrupt — and not the Fuel Suppliers — who extended credit to the company that went bankrupt, and that it is somehow more fair for the Vessel Owners to have to pay twice for the same fuel than for the Fuel Suppliers to take whatever haircut might be imposed upon them in the bankruptcy proceedings (if this Court were to determine that 100% of the interpleaded funds are due to the O.W. Entities and therefore simply become part of the bankrupt's estate) or to have to wait to receive their portion of the interpleaded funds, which might ultimately lead to the full satisfaction of their claims (if this Court were to determine that the O.W. Entities are entitled to only that portion of the interpleaded funds that reflects their fees for the transaction).

would "cut down" a federal statute. *Id.* at 25. One of the purposes of bringing an action *in rem* against a vessel is to "bring[] the owner into the court" or "allow actions against ships where a person owning the ship could not be reached," but the "practical economic fact of the matter is that money paid in satisfaction of [an *in rem* judgment] will have to come from the [vessel] owner's pocket." *Id.* at 23, 26. The Objecting Claimants seek to vindicate their interest in receiving immediate satisfaction of the debt owed to them by the O.W. Entities, notwithstanding the bankruptcy proceeding or the Interpleader Actions. Restricting their ability to do in order to prevent multiple recovery against the Vessel Interests is within the scope of Section 2361 and serves the interests of equity.

## CONCLUSION

For the foregoing reasons, the Court finds that subject matter jurisdiction over the Interpleader Actions is proper. The Court's findings as stated herein are limited solely to its inquiry regarding subject matter jurisdiction and shall not be construed to address any other argument or defense raised in respect of these cases, including, *inter alia,* as to venue and personal jurisdiction.


**SO ORDERED.**


**Date:  July 1, 2015**                                         **VALERIE CAPRONI**
       **New York, New York**                          **United States District Judge**


25